1  Brenna E. Erlbaum (SBN: 296390)
   Brian M. Heit (SBN: 302474)
2  **HEIT ERLBAUM, LLP**
   6320 Canoga Ave., 15th Floor
3  Woodland Hills, CA 92367
   Brenna.Erlbaum@HElaw.attorney
4  Brian.Heit@HElaw.attorney

5

6

7

8                  **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10                        **SAN FRANCISCO**

11 MALIBU MEDIA, LLC,                      Case Number: 3:16-cv-01006-WHA

12              Plaintiff,                 **PLAINTIFF'S MEMORANDUM IN
                                           OPPOSITION TO MOTION TO QUASH
13 vs.                                     THE SUBPOENA**

14 JOHN DOE subscriber assigned IP address
   67.180.85.215,
15
                Defendant.
16

17

18

19

20

21

22

23

24

25

26

27
                                    1
28
─────────────────────────────────────────────────────────
        Plaintiff's Opposition to Defendant's Motion to Quash

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO QUASH THE SUBPOENA**

## I.       INTRODUCTION

Plaintiff respectfully requests the Court deny Defendant's Motion to Quash the Subpoena. Defendant's Motion [CM/ECF 9] fails to state a legally cognizable reason to quash Plaintiff's third party subpoena under Fed. R. Civ. P. 45.  Having failed to satisfy Rule 45, Defendant's Motion should be denied.  Indeed, without the subpoena response from Defendant's ISP, this case cannot proceed.  Defendant asserts that the Internet subscriber assigned the subject IP address may not necessarily be the person who infringed Plaintiff's copyrighted works. However, even if the subscriber is not the infringer, the information sought by Plaintiff's subpoena is both relevant and discoverable.  For the foregoing reasons, as explained more fully below, Defendant's Motion should be denied.

## II.      FACTS

### A. Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business

Colette Pelissier Field, with her husband Brigham Field, are the owners of Malibu Media and began their business from scratch.  See CM/ECF 6-1 at ¶3.  Ms. Field was a real estate agent and Mr. Field was a photographer.  Id. at ¶ 4.  When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together.  Id. at ¶ 5.  The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples.  Id. at ¶ 6.  The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand.  Id.   Their goal was to create erotica that is artistic and beautiful.  Id. at ¶ 7.  The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality.  Id. at ¶ 8.

Their vision has come to fruition.  Currently, X-Art.com has tens of thousands of members, but the Fields are finding it hard to grow and maintain the memberships when so many people

2

1    are finding their films for free.  Id. at ¶ 15.  They have worked hard and invested millions of

2    dollars into their business in order to produce the best quality product.  Id. at ¶ 14.  For the first

3    three years (when their site was not as popular) they did not have as many issues with piracy.

4    Id. at ¶ 18.  Now that their videos are highly desirable, more people steal their videos than pay

5    for a subscription.  Id.  Malibu Media receives many complaints from its members asking why

6    they should pay to subscribe when Malibu Media's movies are available for free through

7    BitTorrent.  Id. at ¶ 19.  Malibu Media invests significant resources into pursuing all types of

8    anti-piracy enforcement, such as Digital Millenium Copyright Act ("DMCA") takedown notices

9    and direct efforts aimed at infringing websites.  Id. at ¶ 27.   Despite sending thousands of

10   DMCA notices per week, the infringement continues.  Id. at ¶ 28.   And, if one searches for "X-

11   Art" on a torrent website the site will reveal thousands of unauthorized torrents available for

12   free.  Id.  Plaintiff Malibu Media has filed suit in this judicial District and in judicial districts

13   across the country seeking to deter and stop the infringement.

14        Defendant's criticism of Plaintiff's copyright protection efforts is unjustified.   Indeed,

15   "[m]any internet blogs commenting on [these types of cases] ignore the rights of copyright

16   owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek

17   injunctions and damages."  Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White,

18   2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013).   In fact, Plaintiff won the first ever

19   BitTorrent copyright infringement lawsuit to reach trial.  See Id.  In his Memorandum Report

20   after the conclusion of the trial, the Honorable Judge Baylson made a number of significant

21   findings.  Importantly, Judge Baylson found "Malibu Media Malibu has satisfied its burden of

22   proof with substantial evidence and deserves a large award."  Malibu Media, LLC v. John Does

23   1, 6, 13, 14, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

24        B.  Courts throughout the Country Have Expressly Found that Malibu Media's Counsel

25             do not Engage in Improper Litigation Tactics

26        Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the

27   media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . .  Rather,

3

28

Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Id.* (Emphasis in original). Similarly, the Honorable Judge Hegarty of the District of Colorado has stated: "the Court has also witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement." *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013).

Other courts have also opined that the criticism Plaintiff receives is unwarranted. "[Defendant] has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far." *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 (N.D. Ill. May 17, 2013). *See also Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012) (same); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).

C.  The Infringer

Defendant's Internet was used to infringe over one hundred of Plaintiff's copyrighted works between April, 2014 and December, 2015. *See* CM/ECF 1-2. Indeed, Defendant's Internet has been used to illegally download Plaintiff's movies over the course of more than an entire year. By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies. *See* Complaint, at ¶¶ 11 -20.

The length of time which Plaintiff's investigator recorded Defendant infringing Plaintiff's movies demonstrates that the infringer was not a mere guest or passerby. Indeed, it was someone with access to Defendant's Internet for a long period of time, consistently.

4

1

2

### III. LEGAL STANDARD

Fed. R. Civ. P. 45(d)(3) provides that a court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a person to comply beyond the geographical limits specified in Rule 45(c); requires disclosure of privileged or other protected matter, if no exception or waiver applies; or, subjects a person to undue burden.  *See* Fed. R. Civ. P. 45(d)(3)(A)(i-iv).  The Rule also provides for circumstances in which a court may modify or quash a subpoena.  These circumstances are when the subpoena requires disclosure of trade secret or other confidential research, development, or commercial information; or disclosure of certain expert opinions.  *See* Fed. R. Civ. P.  45(d)(3)(B)(i-ii).  "No other grounds are listed." *Malibu Media, LLC v. John Does 5-8*, 2013 WL 1164867 at \*2 (D. Colo. 2013) (denying motion to quash in similar BitTorrent copyright infringement action where defendant's motion failed to articulate a reason to quash the subpoena that complied with Rule 45).  "The party seeking to quash a subpoena bears the burden of establishing at least one of the requirements under Rule 45(d)(3)." *Malibu Media, LLC v. Doe*, 2014 WL 5599105, at \*3 (M.D. Fla. 2014).

### IV. ARGUMENT

**A.** Defendant's Motion Fails to State a Legally Cognizable Reason to Quash the Subpoena Under Fed. R. Civ. P. 45.

**1. Denials of Liability Do Not Justify Quashing a Subpoena**

Here, Defendant seeks to quash the subpoena on that basis that Defendant is only the subscriber and not the infringer, or in other words, on the basis of a denial of liability.  This is not a legally cognizable reason to quash a subpoena under Rule 45. "'[A] general denial of engaging in copyright infringement is not a basis for quashing .... the merits of this case are not relevant to the issue of whether the subpoena is valid and enforceable.'" *MCGIP, LLC v. Does 1-18*, No. C-11-1495 EMC, 2011 WL 2181620, at \*1 (N.D. Cal. June 2, 2011) (quoting *Voltage Pictures, LLC v. Does,* No. 10–0873(BAH), 2011 U.S. Dist. LEXIS 50787, at \*18–20, 2011

5

1    WL 1807438 (D.D.C. May 12, 2011)). "'[I]t is well-settled that such general denials of liability

2    cannot serve as a basis for quashing a subpoena.'" *Malibu Media, LLC v. Doe*, 2014 WL

3    2879326, at *2 (D. Md. 2014) (quoting *Third Degree Films,* 2012 WL 6690055 at *3). "For the

4    Court to quash the subpoena would allow a subscriber to prevent Malibu from pursuing a

5    potentially valid claim simply by denying liability." *Malibu Media, LLC v. Doe*, 2014 WL

6    7190812, at *2 (D. Md. Dec. 2014). *See also e.g. Malibu Media, LLC v. John Does 1-14*, 287

7    F.R.D. 513, 517 (N.D. Ind. 2012) (defenses and denials of liability "do not address the propriety

8    *vel non* of the subpoenas" and are therefore "irrelevant and premature."). As such, Plaintiff's

9    subpoena should not be quashed.

10           **2.   Defendant Lacks Standing to Argue Undue Burden**

11           Further, Defendant erroneously argues that the subpoena should be quashed because he

12   will be subjected to an undue burden. However, Defendant lacks standing to quash the

13   subpoena on the basis of an undue burden because he is not the subject of the subpoena.

14   "Because the John Doe Defendants are not required to produce any information, there is no

15   burden on them, let alone an undue burden." *Malibu Media, LLC v. John Does 1-23*, No. 5:12-

16   CV-04442, 2013 WL 1389763, at *2 (E.D. Pa. Apr. 3, 2013). "Defendant is not faced with an

17   undue burden because the subpoena is directed at the internet service provider and not the

18   Defendant." *Malibu Media, LLC v. John Does 1-15*, No. CIV.A. 12-2077, 2012 WL 3089383,

19   at *8 (E.D. Pa. July 30, 2012). Because the subpoena does not impose an undue burden on

20   Defendant, the subpoena may not be quashed on this basis.

21           **3. There is Little Risk of Improper Settlement Leverage Because the Court Has**

22           **Provided Defendant with a Protective Order**

23

24           Defendant argues the Court should quash the subpoena because Plaintiff may seek

25   settlement. The risk of improper settlement leverage is not present in this case because this

26   Court has already taken procedural safeguards to protect Defendant. *See* CM/ECF 7. "Malibu

27   Media shall not disclose defendant's name, address, telephone number, email, social media

28

1  username, or any other identifying information, other than defendant's IP address, that it may

2  subsequently learn. All documents including defendant's identifying information, apart from his

3  or her IP address, shall be filed under seal, with all such information redacted on the public

4  docket, unless and until the Court orders otherwise and only after defendant has had an

5  opportunity to challenge the disclosure of any identifying information. Malibu Media explicitly

6  consented to the inclusion of such a protection in its motion." *Id*.  Further, Defendant is

7  represented by counsel who should adequately be able to defend any settlement offers by

8  Plaintiff.  Plaintiff should not be prevented from subpoenaing Defendant's ISP and pursing its

9  lawsuit simply because Plaintiff may consider early resolution of this case.

10        **B.**  Plaintiff Needs The Subpoenaed Information to Continue with this Case.

11        Plaintiff "cannot meet its service obligation under Fed. R. Civ. P. 4 without the

12  requested discovery." *TCYK, LLC v. Does 1-47*, 2013 WL 4805022, at *5 (S.D. Ohio 2013).

13  Without identifying the internet subscriber, Plaintiff has no way to protect its copyrights against

14  pervasive anonymous online infringement.

15        Further, Fed. R. Civ. P. 26 provides for broad discovery, and the identity of the

16  subscriber is clearly relevant under the given standard.

17             Rule 26 authorizes broad discovery, including discovery that "appears

18        reasonably calculated to lead to the discovery of admissible evidence."

19        Fed.R.Civ.P. 26(b)(1). Therefore, even if discovery later reveals that it was

20        someone other than the subscriber who violated plaintiff's copyright, the

21        subpoenaed information (*i.e.,* the subscriber's contact information) is likely to lead

22        to the discovery of admissible information, *i.e.,* the identity of the actual alleged

23        infringer.

24  *Breaking Glass Pictures v. John Does 1-32*, 2014 WL 467137, at *4 (S.D. Ohio 2014)

25  (denying motion to quash).  "This information is necessary for Malibu Media to identify the

26  proper defendant. . . . Because the subpoena is tailored to a particular purpose, and the

27  information it seeks is relevant to Malibu Media's copyright infringement claim, the subpoena

28

7

will not be quashed on this basis." *Malibu Media, LLC v. Doe*, No. CIV. WDQ-14-0252, 2014 WL 2879326, at *2 (D. Md. June 23, 2014). *See also*, *e.g.*, *Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067, at *6 (E.D. Pa. 2012) (same); *Malibu Media, LLC v. John Does 1-15*, 2012 WL 3089383 at *9 (E.D. Pa. 2012) (same); *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 at *5 (N.D. Ill. 2013) (same); *Malibu Media, LLC v. John Does No. 1-30*, 2012 WL 6203697 at *4 (D.N.J. 2012) (same).

Indeed, if the Court grant's Defendant's Motion to Quash, Plaintiff will have a right without a remedy. "Even if there is no ultimate liability, Plaintiff has a constitutional right to file a lawsuit and engage in discovery to determine whether a defendant or someone using a defendant's IP address infringed on its protected works." *Malibu Media*, 2014 WL 1689935 at *5.

**C.** <u>Plaintiff Has Properly Pled Jurisdiction</u>

Defendant argues that the Court should quash the subpoena on the basis that Plaintiff has not been able to demonstrate that Defendant resides in this district.  However, most tellingly, Defendant does not set forth any proof – or even a blanket statement – that Defendant resides in a district other than the Northern District of California.  At this stage, should Defendant's concerns actually merit, Defendant should submit proof to the Court that he or she does not reside in this district.

Regardless, geolocation technology is being used here for the sole purpose to establish that Defendant may be found or resides in this District and that the infringement occurred in this District. "[W]hile these geolocation services are not 100% accurate, these services can place a user no farther away than a city that borders the user's actual location" *AF Holdings, LLC v. Does 1-1058*, 12-7135, 2014 WL 2178839 (D.C. Cir. May 27, 2014) (finding that a plaintiff can establish personal jurisdiction and venue through the use of geolocation services)

**V.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's Motion to Quash.


Dated: May 25, 2016

HEIT ERLBAUM, LLP


/s/ Brian M. Heit
BRIAN M. HEIT, ESQ
Attorney for Plaintiff


**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  /s/ Brian M. Heit

Plaintiff's Opposition to Defendant's Motion to Quash